United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MELVIN LANDRY,<br><br>　　　　　Defendant. | Case No.: CR-13-70716-MAG-1 (KAW)<br><br>DETENTION ORDER |

## I. BACKGROUND INFORMATION

Defendant Melvin Landry is charged by complaint with violations of 18 U.S.C. § 1951(a) (conspiracy to commit Hobbs Act robbery) and 18 U.S.C. § 1951(a) (Hobbs Act robbery). On July10, 2013, the United States moved for Defendant's detention pursuant to the Bail Reform Act, and asked for a hearing as permitted by 18 U.S.C. § 3142(f). Pretrial Services prepared a full bail study. On July 12, 2013, the court conducted a detention hearing. Defendant was present, in custody, and represented by Assistant Federal Public Defender Joyce Leavitt. Assistant United States Attorney Kathryn Haun appeared on behalf of the Government. For the reasons stated below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to

rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi*, 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

The complaint charges that Defendant and a co-conspirator robbed a Walmart, located at 405 Albrae Street, Fremont, California, on January 3, 2013, and brandished a firearm during the commission thereof. The Court notes that a more recent complaint was filed on July 12, 2013 that includes several other similar armed robberies allegedly committed by Defendant and the same co-conspirator, as well as an attempt to bribe a federal official with $60,000, a motor vehicle, and a Rolex watch in exchange for releasing him from custody.

DETENTION ORDER
CR-13-70716-MAG-1 (KAW)                        2

### A. The Nature and Circumstances of the Offense and Weight of the Evidence

The offenses charged in this case are Hobbs Act robbery and conspiracy to commit Hobbs Act robbery. While this instance does not give rise to a rebuttable presumption of detention, at the time of his arrest, Defendant was released on bond on related robbery charges in Alameda County. The new complaint arising out of the same facts as the first complaint, indicates that a firearm was used in the robbery by the Defendant. The robbery took place in the middle of the afternoon with people and children present, and Defendant allegedly brandished the firearm in furtherance of the robbery, a crime of violence. In addition, the subsequent complaint, which will be merged with this complaint into one indictment, charges a violation of 18 U.S.C. § 924(c), which does give rise to a presumption that no condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. 3142(e)(3)(B). Several hundreds of thousands of dollars were stolen during the multiple alleged robberies, and the cash and checks stolen have not yet been recovered.

As to the weight of the evidence, while this is the least important factor, the robbery was caught on the store's surveillance cameras, and two eyewitnesses have positively identified Defendant. Thus, the nature and circumstances of the offenses and the weight of the evidence weigh in favor of detention.

### B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community

Defendant is 22 years old and he was residing with his mother and father in Oakland, California at the time of his arrest. He graduated from Oakland Technical High School in 2009. Defendant advised that he had been employed as an in-home caretaker since 2011, but was terminated as a result of the instant offense. His mother, however, indicated that he was unemployed at the time of his arrest, having separated from his caretaker position in 2012. His mother also indicated that Defendant's only source of income is family support. Defendant declined to provide any information pertaining to alcohol and/or illicit drug use. Defendant does have asthma, for which he takes medication.

Defendant sustained his first juvenile arrest in 2006 for carrying a concealed, loaded firearm in a public place. In 2008, he was arrested for rape, unlawful sexual intercourse with a minor, and sexual battery, which was handled informally. In 2011, Defendant sustained a misdemeanor conviction for carrying a concealed weapon in a vehicle, for which he was sentenced to 90 days house arrest and three years of probation. In both February and May 2013, Defendant was arrested for robbery, which may be in connection with his pending charges in Alameda County. Defendant also has an active restraining order against him effective until May 24, 2016.

A subsequent search of Defendant's Facebook account and his co-defendant's cell phone depict Defendant flaunting large wads of cash, in excess of what appears to be several thousand dollars, as well as a photograph of Defendant next to a semiautomatic pistol. In addition, Defendant's Facebook page contains the following message in the "about" me section: "How many licks is it gone take for a young nig[XXX] to hit and get rich?" (expletive omitted). "Licks" is slang for committing a robbery.

Defendant was released on bail at the time of his arrest for the instant offense, a violent offense involving a firearm, which he brandished. In addition, as provided above, he was recently charged with other armed robberies, and is the primary suspect in other uncharged, armed robberies, which suggests that no combination of release conditions exist to mitigate Defendant's risk of danger to the community.

### C. Risk of Nonappearance

Factors that indicate Defendant poses a risk of nonappearance include his current unemployment, and conflicting information pertaining to his employment. In the complaint filed on July 12, 2013, Defendant allegedly attempted to bribe a federal agent and Sheriff's deputy into releasing him so that he could flee. As a result, Defendant was placed in a maximum security unit in jail due to his intent to escape/high risk of flight. Defendant is facing a significant prison sentence, including significant mandatory minimums if he is convicted of multiple counts, with both the instant offense and the recently filed charges. Mitigating factors include his lifelong

residence in the San Francisco Bay Area, familial ties to the district, and lack of international travel.

Defendant proposed his mother, father, and godmother as sureties, but none of them were suitable to mitigate the risk of flight or danger to the community. Defendant's mother Lisa Landry advised that she is currently unemployed and could not assist with bail at this time. She did, however, indicate that she was willing to allow Defendant to continue residing at her residence. Since Defendant allegedly committed the instant offense and other charged and uncharged armed robberies while residing with his mother, her home is not a suitable residential placement. Defendant's father Melvin Landry, Sr., was willing to cosign an unsecured bond. Landry, Sr., however, has a criminal history for weapons-related charges, and Defendant was residing with both parents at the time he allegedly committed the instant offense. Defendant's godmother Carole Barker advised that she is willing to sign an unsecured bond. She, however, has an old misdemeanor conviction for Fraud to Obtain Aid.

As noted above, the cash stolen in the robberies has not been recovered, and Defendant has pictures of himself posted on Facebook with a lot of cash. Thus, there is a risk that Defendant may have access to substantial financial resources to flee or engage in other criminal conduct.

In light of the above, the Court disagrees with Pretrial Services' belief that there exists a combination of conditions that could be imposed to reasonably mitigate the risk of flight.

Even if Defendant could present a viable surety, he was on pretrial release on a pending criminal matter in Alameda County at the time of his arrest. For these reasons, it is unlikely that an unsecured bond would provide Defendant with sufficient moral suasion to abide by any conditions of pretrial release that this court could impose.

### III. CONCLUSION

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a danger to the community and a risk of nonappearance, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: July 16, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge

DETENTION ORDER
CR-13-70716-MAG-1 (KAW)                                  6